**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER BARKSDALE,   ) | CASE NO.   1:09-cv-2922 |
| ) | |
| Plaintiff,   ) | |
| ) | MAGISTRATE JUDGE VECCHIARELLI |
| v.   ) | |
| ) | |
| MENTAL HEALTH SERVICES   ) | MEMORANDUM OPINION |
| FOR HOMELESS PERSONS, INC.   ) | |
| ) | Doc. Nos. 4, 5, 7, 15 |
| Defendant.   ) | |

This case is before the magistrate judge on consent. Before the court is the motion of defendant, Mental Health Services for Homeless Persons, Inc. ("MHS") to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) ("R. 12(b)(6)") for failure to state a claim upon which relief may be granted. Doc. No. 4. Plaintiff, Christopher Barksdale ("Barksdale"), appearing *pro se*, opposes MHS's motion and moves for default judgment. Doc. No. 5. Barksdale also moves for a judgment entry against defendant for failure to respond timely to the complaint. Doc. No. 7. The motion for a judgment entry also seeks entry of judgment on Barksdale's motions for an injunction and an evidentiary hearing.[1]

---

[1] On April 13, 2010, after the Case Management Conference, the court heard arguments regarding the pending motions. The court told Barksdale that his motion for an injunction had not been properly termed a motion for a temporary restraining order nor had it been accompanied by an affidavit or other evidence necessary to support such a motion. Consequently, the court found that defendant reasonably believed that Barksdale's motion

Also before the court is Barksdale''s motion for a temporary restraining order. Doc. No. 15. For the reasons given below, the court DENIES Barksdale's motion for default judgment and DENIES his motion for a judgment entry. The court also GRANTS MHS's motion in its entirety and DISMISSES Barksdale's complaint. The court dismisses Counts One and Three of the complaint in their entirety with prejudice and dismisses that portion of Count Two based on Ohio Rev. Code § 5122.11 with prejudice and that portion of Count Two based on Ohio Rev. Code § 2305.51(B)(1), (2) without prejudice. Finally, the court DENIES Barksdale's motion for a temporary restraining order.

I

Barksdale pleads or does not deny the following facts. Barksdale was employed by MHS and was a member of the Service Employees International Union, District 1199 ("the union"). Barksdale's employment at MHS was covered by a collective bargaining agreement between the union and MHS.

On November 12, 2008 at about 11:30 p.m., Barksdale was riding a public bus when he encountered a client of MHS's.[2] When the other individual recognized Barksdale, he began threatening the lives of other staff members at MHS and then threatened Barksdale. As Barksdale prepared to leave the bus, this individual moved as if to attack Barksdale. Barksdale pushed the other person back into his seat. The police were called, and

---

was a demand for injunctive relief appended to the complaint rather than a motion. The court assured Barksdale that he could file a properly denominated and supported motion for a temporary restraining order at any time while the case remained pending. Barksdale has now filed such a motion.

[2] The parties seem to disagree regarding whether this individual was a current or former client of MHS's.

Barksdale declined to press charges. After the incident, Barksdale completed a "Client Risk Precautions" form at MHS describing the risk posed by the individual he encountered on the bus, and Barksdale submitted the completed form to his supervisor.

Nearly a week later, on November 18, 2008, MHS terminated Barksdale. The Corrective Action Notice issued in connection with the termination stated that on November 12 and 13, 2008 staff members discovered Barksdale accessing pornographic websites using one of MHS's computers. The Notice also cited three previous offenses, occurring on March 18, 2008, April 21, 2008, and September 9, 2008, for which Barsdale received a verbal warning, a written warning, and a suspension, respectively. Barksdale was found to have come late to work without giving prior notice in each previous citation.

Barksdale asked the union to represent him in seeking to overturn his termination. On November 30, 2008, the union declined to represent him.

On November 9, 2009, Barksdale filed an action in state court against MHS in the matter of his termination. Barksdale's complaint asserted causes of action for (1) breach of the collective bargaining agreement, (2) violations of Ohio Rev. Code §§ 5122.11 ("§ 5122.11" and 2305.51(B)(1), (2) ("§ 2305.51(B)(1), (2)"), and (3) wrongful discharge in violation of public policy pursuant to *Greeley v. Miami Valley Maint. Contractors, Inc.*, 49 Ohio St. 3d 228, 551 N.E.2d 981 (1990). Barksdale served the complaint on MHS on November 30, 2009. Defendant removed the case to federal court on December 17, 2009. On December 22, 2009, MHS moved to dismiss Barksdale's complaint. Barksdale moved for default judgment on January 8, 2009 and moved for a judgment entry on February 23, 2009.

3

II

Before examining the motion to dismiss, the court will examine Barksdale's motions for a default judgment and for a judgment entry. Barksdale cites Ohio's Rules of Civil Procedure for the proposition that a motion to dismiss is not a responsive pleading to a complaint. Barksdale argues that because Ohio Civ. R. 6(B)(2) requires a defendant to file a responsive pleading within 28 days of being served with the complaint, and because a motion to dismiss is not a responsive pleading under Ohio law, MHS is in default. Consequently, Barksdale concludes, the court must grant his motion for default judgment.

There are two problems with Barksdale's argument. First, once MHS removed the case to federal court, Ohio's procedural rules no longer applied to the case. Rather, the case was from that time forward governed by the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").[3] Thus, the Ohio civil rules were irrelevant to the conduct of this case once the case was removed to federal court.

The second problem with Barksdale's argument is that the federal civil rules do not support Barksdale's motion for default judgment. As MHS points out, Fed. R. Civ. P. 81(c)(2)(C) provides that a defendant who removes a case to federal court and who has not as yet filed an answer to the initial pleading has five days after filing the notice of removal to "answer or present other defenses or objections under these rules . . . ." MHS

---

[3] Barksdale cites *Erie R. Co. v. Tomkins*, 304 U.S. 64 (1938), and 28 U.S.C. § 1652 for the proposition, "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." He asserts, therefore, that Ohio Rules of Civil Procedure apply to this case. The problem with that argument is that the Ohio civil rules are not *decisional* rules. As their name implies, they are *procedural* rules. They have no application to cases heard in federal court.

4

removed the case on December 17, 2009 and filed its motion to dismiss on December 22, 2009. A motion to dismiss pursuant to R. 12(b)(6) is one of seven defenses that may be asserted by motion under the federal rules. *See* R. 12(b). For these reasons, MHS's motion to dismiss timely asserted a defense to the complaint under the federal rules. Moreover, if the court grants a motion to dismiss, the case is concluded. But if the court denies the motion, then the movant has ten days from receiving notice of the court's action to file a timely answer to the complaint. R. 12(a)(4)(A). In other words, a defendant is not required to file an answer to the complaint while a motion to dismiss is pending.

As MHS filed a timely motion to dismiss and as MHS is not required to file an answer while the court considers MHS's motion, Barksdale errs in concluding that HMS has defaulted its opportunity to answer his complaint. Consequently, Barksdale's motions for default judgment and for a judgment entry based on such a default judgment are without merit. These motions are, therefore, DENIED.

III

In deciding a motion to dismiss under R. 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007). A complaint should be dismissed when it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).

Documents referenced in the pleadings and central to plaintiff's claims, matters of which a court may properly take notice, public documents, and letter decisions of government agencies may be appended to a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499, 2509 (2007). Otherwise, if a party

5

appends matters outside the pleadings to a motion to dismiss and the court considers that material, the motion must be treated as a motion for summary judgment made pursuant to Fed. R. Civ. P. 56. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009).

Federal courts have long recognized that the pleadings of a *pro se* litigant must be construed liberally. *See e.g. Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam) (holding a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"); *Williams v. Browman*, 981 F.2d 901, 903 (6th Cir. 1992) ([P]*ro se* pleadings should be construed more liberally than pleadings drafted by lawyers."). As Barksdale appears in this case *pro se*, the court shall construe Barksdale's pleadings liberally.

IV

MHS moves to dismiss Barksdale's complaint because, according to MHS, even assuming all of the facts pleaded in the complaint to be true, none of his grounds for relief states a claim upon which relief may be granted. Barksdale denies that he fails to state a claim for relief. The court will examine in turn the arguments of both sides regarding each claim in the complaint.

*A. Breach of the Collective Bargaining Agreement*

Barksdale apparently believes that the collective bargaining agreement requires MHS to bargain with him in good faith before terminating him. According to Barksdale, by failing to bargain with him in good faith before terminating him, MHS breached the collective bargaining agreement. MHS responds that a state claim for breach of contract is preempted by the Labor Management Relations Act, section 302 ("§ 301"), codified at 29 U.S.C. § 185. Moreover, MHS continues, Barksdale has failed to state a claim pursuant

to § 301 because he failed to allege that the union breached its duty of fair representation and because any claim pursuant to § 301 is barred by the relevant statute of limitations.

Employees who believe that they have been dismissed in violation of a collective bargaining agreement may bring a suit in federal court pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("§ 301"). *Hines v. Anchor Motor Freight*, 424 U.S. 554, 562 (1976). Section 301 pre-empts any state law claim arising from an alleged breach of a collective bargaining agreement. *Smolarek v. Chrysler Corp.*, 879 F. 2d 1326, 1329 (6th Cir. 1989 ("In a series of cases, the Supreme Court has made clear that § 301 of the LMRA preempts any state-law claim arising from a breach of a collective bargaining agreement."). Before bringing such a suit, however, the employee must exhaust the grievance procedures established pursuant to the collective bargaining agreement. *Id.* at 563; *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965).

"[A] union may not ignore a meritorious grievance or process it in a perfunctory fashion." *Vaca v. Sipes,* 386 U.S. 171, 191 (1967). In such a case, the employee may bring a suit pursuant to § 301 alleging dismissal by the employer in violation of the collective bargaining agreement and a breach by the union of its duty of fair representation in failing to prosecute the employee's claims properly. *Hines*, 424 U.S. at 563-65. The employee must prove both allegations for this action to succeed:

> In this hybrid suit under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to recover against *either* the Company or the Union, [plaintiff] must show that the Company breached the Agreement *and* that the Union breached its duty of fair representation. Unless [plaintiff] demonstrates *both* violations, he cannot succeed against either party.

*White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559-60 (6th Cir. 1990) (quoting *Bagsby v. Lewis Bros. Inc. of Tennessee,* 820 F.2d 799, 801 (6th Cir. 1987) (emphasis in the

7

original; citation omitted). A claimant must raise a hybrid § 301 claim withing six months of the date on which he knew or reasonably should have known that the union had breached its duty of fair representation. *Schoonover v. Consolidated Freightways Corp.*, 49 F.3d 219, 221 (6th Cir. 1995) (citing *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151 (1983).

Barksdale's claim for breach of the collective bargaining agreement is pre-empted by § 301. To succeed in this claim, he must prove both a violation of the collective bargaining agreement by MHS and a breach of the duty of fair representation by the union. Barksdale fails to allege in his complaint a breach of the duty of fair representation by the union. Thus, even if the court liberally construes Barksdale's complaint as stating a cause of action pursuant to § 301, Barksdale fails to allege a necessary element of that claim. Finally, Barksdale filed his complaint nearly a year after he learned that the union declined to represent him and, therefore, well beyond the six-month period within which he could have filed a timely claim pursuant to § 301.[4]

For the reasons given above, Barksdale's cause of action fails to state a claim upon which relief may be granted. Consequently, the court GRANTS MHS's motion to dismiss Barksdale's his claim for breach of the collective bargaining agreement.

*B.     Alleged violations of Ohio Rev. Code §§ 5122.11 and 2305.51(B)(1), (2)*

Barksdale contends that MHS is liable to him pursuant to its violations of §§ 5122.11 and 2305.51(B)(1), (2). MHS responds that § 5122.11 has no private cause of action and

---

[4] Barksdale alleges on page 2 of his Complaint that the union refused on November 30, 2008 to arbitrate the matter. He commenced this action in Common Pleas Court on or about November 9, 2009.

8

that Barksdale has not pleaded sufficient facts for a cause of action pursuant to § 2305.51(B)(1) or (2).

> Section 5122.11 reads in its entirety as follows:
>
> Proceedings for the hospitalization of a person pursuant to sections 5122.11 to 5122.15 of the Revised Code shall be commenced by the filing of an affidavit in the manner and form prescribed by the department of mental health, by any person or persons with the court, either on reliable information or actual knowledge, whichever is determined to be proper by the court. This section does not apply to the hospitalization of a person pursuant to section 2945.39, 2945.40, 2945.401, or 2945.402 of the Revised Code.
>
> The affidavit shall contain an allegation setting forth the specific category or categories under division (B) of section 5122.01 of the Revised Code upon which the jurisdiction of the court is based and a statement of alleged facts sufficient to indicate probable cause to believe that the person is a mentally ill person subject to hospitalization by court order. The affidavit may be accompanied, or the court may require that the affidavit be accompanied, by a certificate of a psychiatrist, or a certificate signed by a licensed clinical psychologist and a certificate signed by a licensed physician stating that the person who issued the certificate has examined the person and is of the opinion that the person is a mentally ill person subject to hospitalization by court order, or shall be accompanied by a written statement by the applicant, under oath, that the person has refused to submit to an examination by a psychiatrist, or by a licensed clinical psychologist and licensed physician.
>
> Upon receipt of the affidavit, if a judge of the court or a referee who is an attorney at law appointed by the court has probable cause to believe that the person named in the affidavit is a mentally ill person subject to hospitalization by court order, the judge or referee may issue a temporary order of detention ordering any health or police officer or sheriff to take into custody and transport the person to a hospital or other place designated in section 5122.17 of the Revised Code, or may set the matter for further hearing.
>
> The person may be observed and treated until the hearing provided for in section 5122.141 of the Revised Code. If no such hearing is held, the person may be observed and treated until the hearing provided for in section 5122.15 of the Revised Code.

Section 5122.11 does not provide a private cause of action, nor does Barksdale cite any other provision of Ohio law creating a private cause of action for accomplishing the purposes of § 5122.11 or for asserting liability for violations of that section. As Barksdale

9

has failed to demonstrate that Ohio law entitles him to hold MHS liable for any alleged violation of § 5122.11, the court GRANTS MHS's motion to dismiss that portion of Barksdale's second cause of action asserting liability pursuant to § 5122.11.

> Subsection 2305.21(B)(1) and (2) read as follows:
>
> (B) A mental health professional or mental health organization may be held liable in damages in a civil action, or may be made subject to disciplinary action by an entity with licensing or other regulatory authority over the professional or organization, for serious physical harm or death resulting from failing to predict, warn of, or take precautions to provide protection from the violent behavior of a mental health client or patient, only if the client or patient or a knowledgeable person has communicated to the professional or organization an explicit threat of inflicting imminent and serious physical harm to or causing the death of one or more clearly identifiable potential victims, the professional or organization has reason to believe that the client or patient has the intent and ability to carry out the threat, and the professional or organization fails to take one or more of the following actions in a timely manner:
>
> (1) Exercise any authority the professional or organization possesses to hospitalize the client or patient on an emergency basis pursuant to section 5122.10 of the Revised Code;
>
> (2) Exercise any authority the professional or organization possesses to have the client or patient involuntarily or voluntarily hospitalized under Chapter 5122. of the Revised Code . . . .

The subsection explicitly provides liability in the case of "serious physical harm or death" and only if "the client or patient or a knowledgeable person has communicated to the professional or organization an explicit threat of inflicting imminent and serious physical harm to or causing the death of one or more clearly identifiable potential victims . . . ."

Subsection 2305.51(B) provides liability "for serious physical harm or death." Barksdale's complaint does not allege that he suffered serious physical harm from his encounter with the current or former MHS client on the public bus. Indeed, the police report regarding the incident does not state that Barksdale suffered physical harm of any sort. In

10

addition, Barksdale does not allege that anyone communicated to MHS "an explicit threat of inflicting imminent and serious physical harm to or causing the death of one or more clearly identifiable potential victims" in time to allow MHS to take timely action against such a threat. The only "threat warnings" that Barksdale references are in a "Client Risk Precaution" form that Barksdale completed *after* the incident occurred. This is obviously insufficient as a timely warning to MHS to act to prevent the incident of which Barksdale complains. *See Campbell v. Ohio State Univ. Med. Ctr.*, 108 Ohio St. 3d 376, 843 N.E.2d 1194 (2006) (finding that an institution may be held liable pursuant to § 2305.51 only if the threat of imminent harm to particular individuals is communicated timely to the institution).

Barksdale pleads insufficient facts to satisfy all necessary elements of a claim pursuant to § 2305.51(B)(1) or (2). Consequently, the court GRANTS MHS's motion to dismiss that portion of Barksdale's second cause of action alleging liability pursuant to § 2305.51(B)(1) and (2). However, because there is a possibility that Barksdale may be able to amend this claim so as to plead it properly, the court shall dismiss the claim without prejudice.[5]

*C.    Alleged Employment Tort in Violation of Public Policy*

Barksdale asserts that his termination by MHS was a tort in violation of public policy, as described in *Greeley*. In particular, Barksdale argues that his submission of the "Client Risk Precaution" form to his supervisor warned of violations of §§ 2305.51, 5122.11, and 29 U.S.C. §§ 151-169 and that he was actually terminated for pointing out these violations.

---

[5] Thus, the only claim that may be amended and refiled, is a state claim which is not subject to the jurisdiction of the federal courts in the absence of a pending federal claim. No federal claims remain. Should Barksdale elect to file a new complaint on this claim, it should be filed in state, not federal, court.

This termination, Barksdale concludes, violated Ohio's Whistleblower Statute, Ohio Rev. Code § 4113.52.  Barksdale asserts this violation as a *Greeley* tort, alleging a termination in violation of public policy.  MHS responds that, as a union employee, Barksdale is not entitled to maintain an action pursuant to *Greeley*.

A *Greeley* tort is an exception to the "employment-at-will" doctrine."  This public policy exception to employment-at-will originated in *Petermann v. Internatl. Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local 396*, 174 Cal. App.2d 184, 344 P.2d 25 (1959), which held that:

> It would be obnoxious to the interests of the state and contrary to public policy and sound morality to allow an employer to discharge any employee, whether the employment be for a designated or unspecified duration, on the ground that the employee declined to commit perjury, an act specifically enjoined by statute.  The threat of criminal prosecution would, in many cases, be a sufficient deterrent upon both the employer and employee, the former from soliciting and the latter from committing perjury.  However, in order to more fully effectuate the state's declared policy against perjury, the civil law, too, must deny the employer his generally unlimited right to discharge an employee whose employment is for an unspecified duration, when the reason for the dismissal is the employee's refusal to commit perjury.

*Id.* at 188-189, 344 P.2d at 27.  The Ohio Supreme Court adopted the exception in *Greeley*.

The *Greeley* exception, however, concerns only "at-will" employment.  Because union members are not "at-will" employees, the exception does not apply to union members:

> *Greeley* provides an exception to the *employment-at-will* doctrine.  Thus, . . . for an employee to bring a cause of action pursuant to *Greeley, supra,* that employee must have been an employee at will.  The identifying characteristic of an employment-at-will relationship is that either the employer or the employee may terminate the employment relationship for any reason which is not contrary to law.  Haynes clearly does not qualify as an employee at will. As a member of a union, the terms of her employment relationship were governed by a collective bargaining agreement. . . . Because she was not an employee at will, she is outside the class of employees for whom *Greeley* provides protection.

*Haynes v. Zoological Soc. of Cincinnati*, 73 Ohio St. 3d 254, 258, 652 N.E.2d 948, 951 (1995) (citations omitted).

Barksdale was a member of the union whose terms of employment were governed by a collective bargaining agreement. Under Ohio law, he is outside the class of employees entitled to assert a claim pursuant to *Greeley*. For this reason, the court GRANTS MHS's motion to dismiss Barksdale's *Greeley* claim.

Finally Barksdale argues as follows:

> If an employer substitutes a different employment termination for that which is required by law, such [an] employment termination is wholly unauthorized and void. Defendant's employment termination that does not comport with statutory requirements is contrary to law. Because the employment termination does not conform to statutory mandates requiring the imposition of 29 U.S.C. §§ 151-169 [it] is [a] nullity and void, [and] it must be vacated, the effect of vacating the termination places the parties in the same position they would have been in had there been no termination.

Complaint at 1 (punctuation and capitalization altered from the original). Barksdale offers no legal authority for these propositions, nor has he stated a claim upon which relief can be granted that his termination was contrary to state or federal law. Consequently, this argument is not well-taken.

III

Finally, Barksdale moves for a temporary restraining order to require MHS to continue his employment, salary, and benefits. In determining whether to issue a temporary restraining order, a court must consider four factors: "(1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of an injunction upon the public interest." *Tucker v. City of Fairfield,* 398 F.3d

457, 461 (6th Cir. 2005) (quotations and citation omitted). These four factors are "factors to be balanced, not prerequisites that must be met." *Six Clinics Holding Corp., II v. Cafcomp Systems,* 119 F.3d 393, 400 (6th Cir. 1997). To demonstrate a likelihood of success on the merits, "it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Id.* at 402.

The court need not consider the other factors or await a response from MHS because it is clear, given the analysis above, that Barksdale has no chance of succeeding on the merits of any of his claims as they are currently pleaded. Consequently, as Barksdale has failed to demonstrate that any of his claims is a "fair ground for litigation," his motion for a temporary restraining order must be denied.

IV

For the reasons given above, the court DENIES Barksdale's motion for default judgment and DENIES his motion for a judgment entry. The court also GRANTS MHS's motion in its entirety and DISMISSES Barksdale's complaint. The court dismisses Counts One and Three of the complaint in their entirety with prejudice and dismisses that portion of Count Two based on Ohio Rev. Code § 5122.11 with prejudice and that portion of Count Two based on Ohio Rev. Code § 2305.51(B)(1), (2) without prejudice. Finally, the court DENIES Barksdale's motion for a temporary restraining order.

IT IS SO ORDERED.

Date: April 27, 2010                     /s/ *Nancy A. Vecchiarelli*
                                         U.S. MAGISTRATE JUDGE